39 So.2d 689

**ANDERSON v. RAILWAY EXP. AGENCY.**

**4 Div. 68.**

Court of Appeals of Alabama.

Oct. 5, 1948.

Rehearing Denied Dec. 14, 1948.

C. B. Fuller, of Andalusia, for appellant.

192

. Robt. B. Albritton, Albert L. Rankin and Powell, Albritton & Albritton, all of Andalusia, for appellee.

HARWOOD, Judge.

On May 23, 1946 the plaintiff below delivered to defendant's (appellee's) agent at Opp a quantity of bees for shipment to Carrot River, Saskatchewan, Canada. Upon arrival 80% of the bees were dead.

The complaint originally filed contained one count, and tended to follow the Code form, Form 15, Section 223, Title 7 Code of Alabama 1940. This count however claimed damages "for failure to deliver certain goods, towit: One hundred pounds of live bees, received by the defendant, as a common carrier, to be delivered to A. J. Janzen, Carrot River, Sask., Canada, for reward, which it failed to deliver, in good condition, to the plaintiff's damage aforesaid."

The defendant filed a demurrer to this count, ground 4 of said demurrer being that "Said complaint is so vague, indefinite and uncertain that it fails to apprise the defendant of the cause of action it is called upon to defend."

The court sustained the demurrer, and the complaint was amended by adding Count 2, as follows:

"(2) The plaintiff claims of the defendant the sum of $216.64, damages, with interest thereon from May 23, 1946, for the failure to deliver certain goods, to-wit; 100 No. of live bees, received by the defendant, as a common carrier in good condition, to be delivered to A. J. Janzen, Carrott River, Sask, Canada, for reward, which it failed to deliver in good condition, but negligently allowed said bees to become chilled, or otherwise injured, in handling, during transportation, such that a large portion of said bees were dead, to the plaintiff's damage in the sum aforesaid.

"Plaintiff avers that claim for the injury of said bees was filed with the Defendant, which claim has been denied."

Issue was then joined by a plea of the general issue in short by consent with leave granted both parties to give in evidence any matters that might be specially pleaded.

Evidence presented by the plaintiff tended to show that the bees in question were properly packed in "shipping packages" each containing about five pounds of bees. A container of food, consisting of a mixture of sugar and water, and sufficient for ten days to two weeks feeding was in each package.

An extra quarter pound of bees was put in each package to replace those that might die in shipment.

On cross examination Mr. A. F. Anderson, a witness for the plaintiff, testified that worker bees have a life span of about 30 days while working, and when not working they may live as long as two years under certain conditions.

The bees involved in this suit were workers. In reply to the question as to whether they had been working Mr. Anderson answered "Yes. No, they couldn't. You know they hatch out every ten days, and these are young bees we ship.".

It was also shown by cross examination of plaintiff's witness A. F. Anderson that the hazards affecting the life of a bee are chilling, over heating, and rough handling of containers in which they are packed,

and this witness "imagined" they would starve to death, and "supposed" they died of old age.

For the defense Mr. R. H. Garrett, agent for the Railway Express Agency at Andalusia testified that the defendant company tried to have the best facilities known for shipping bees. That the company has steel cars, that operate over the best road beds in the United States.

This witness further testified that on the 24th and 25th of May, 1946, the national railroad strike stopped the movement of all cars, including the defendant's.

On cross examination this witness testified that before bees are accepted for shipment they must be properly packed in accordance with the defendant's regulations, and that "We try to handle them under the best conditions we have." "We try to keep them at the same temperature all the way, and they are attended all the way."

This witness did not however know anything about the handling of this shipment of bees, but learned about it when he was called as a witness.

This witness further testified on cross examination that it takes approximately four or five days for a shipment to go from Opp to Saskatchewan, Canada.

In connection with this portion of Mr. Garrett's testimony, and also that pertaining to stoppage of cars during the rail strike it should be noted that a Uniform Express Receipt issued by defendant shows that these bees were shipped from Opp on May 23, 1946, and that the cancellation, dated at Carrot River, Canada, on 27th or 29th of May 1946, shows "Bees good 80% dead."

This Uniform Express Receipt contains a provision that unless caused in whole or in part by its own negligence the company shall not liable for damage or delay caused by strikes. In its answer to interrogatories propounded by the plaintiff the defendant denied liability on the grounds that the damage to the bees was caused by the national railroad strike.

The above constituted the material evidence in this cause. At the conclusion of the trial below the court, at the defendant's request, gave to the jury the general affirmative charge for the defendant. The jury's verdict, pursuant to such instruction was for the defendant, and judgment was entered accordingly.

Appellee's counsel urges in his brief that under Count 2 the plaintiff averred that the defendant negligently allowed the bees to become injured, and that the plaintiff's proof failed to establish negligence.

Except for the averment that the defendant "negligently allowed said bees to become chilled, or otherwise injured" Count 2 is substantially in Code form. The count in effect only avers negligence generally.

This Code form of complaint is based on the common law liability of a common carrier; that of an insurer against injury in transit save from the act of God, the public enemy, the fault of the shipper, or the inherent perishable quality of the goods.

However, under our liberal system of pleading such form is available in an action on an interstate bill of lading, or as in this case on a uniform express receipt, although such complaint shows on its face the goods are perishable in nature. Louisville & N. R. Co. v. Hendricks, 233 Ala. 259, 171 So. 273, and on proper proof a recovery may be had for breach of the common law duty of a common carrier, or upon the bill of lading. Atlantic Coast Line R. Co. v. J. S. Carroll Mercantile Co., 213 Ala. 234, 104 So. 413.

We express no opinion as to whether bees should be classified as perishable goods, since that point is not essential to a decision in this case.

To make out a prima facie case under a count drawn in Code form on a bill of lading of a common carrier, Form 15, Title 7, Section 223, Code of Alabama 1940, under a plea of the general issue, the plaintiff had the burden to prove the material facts alleged, that is, the receipt of the goods by the carrier for transportation to the point of destination, for a reward, and that the goods were injured in transit with resultant damages. Louisville & N. R. Co. v. Hendricks, supra. Upon such

proof a prima facie case, including negligence is established against the carrier. Atlantic Coast Line R. Co. v. J. W. Maddox & Co., 210 Ala. 444, 98 So. 276; Steele & Burgess v. Townsend, 37 Ala. 247, 256, 79 Am.Dec. 49; South & N. Ala. R. Co. v. Henlein, 52 Ala. 606, 612, 23 Am.Rep. 578.

Under the proof submitted by the plaintiff it is our opinion that, under the principles of the cases cited immediately above, he clearly established a prima facie case, including the element of negligence as averred in Count 2.

The plaintiff having established his prima facie case the onus probandi fell upon the defendant under his plea of the general issue in short by consent to exempt itself from negligence, or establish any one of the common law exceptions to his liability above noted or any of the lawful limitations stipulated in the Uniform Express Receipt, i.e. that the damage resulted from the national railway strike and not from defendant's negligence.

In meeting this burden the defendant's evidence tended to show that the defendant company had available excellent facilities for the shipment of bees and their handling while in transit. Evidence along this line was elicited through the testimony of Mr. Garrett, defendant's agent at Andalusia. However Mr. Garrett's testimony also shows that he had no contact with this shipment of bees from Opp. The record is completely negative as to any evidence tending to show that this particular shipment of bees was the beneficiary of the facilities mentioned in Mr. Garrett's testimony.

Mr. Garrett further testified that ordinarily four or five days are required for a shipment to go from Opp to Saskatchewan, Canada. These bees were shipped on May 23, 1946, and arrived at their destination either the 27th or 29th of May, some four or six days later. According to Mr. Garrett's testimony the shipment was delayed en route for two days by the national railroad strike in this country. Under the plaintiff's evidence the bees were supplied with sufficient food for from ten to fourteen days. We are of the opinion there-

fore that under this evidence that the question of injury to the bees, if any, resulting from the strike was a question solely within the province of the jury.

For the above reasons it is our conclusion that the lower court erred in giving to the jury the general affirmative charge in favor of the defendant.

Reversed and remanded.